UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NATASHA TOLBERT OBO | * | CIVIL DOCKET |
| HER MINOR CHILDREN, N.E.T., | * | |
| N.T., and N.L.M.; and BRIDGET | * | |
| ARMSTRONG OBO HER MINOR CHILD | * | NUMBER: 18-8359 |
| N.A. | * | |
| | * | SECT. |
| VERSUS | * | |
| | * | |
| MARLIN N. GUSMAN, | * | JUDGE |
| ORLEANS PARISH SHERIFF; | * | |
| CORRECT CARE SOLUTIONS, LLC; | * | MAG. |
| ROGELIO PEREZ, RN; DAVID OATES, RN; | * | |
| PAMMALIER WALKER, NP; | * | |
| LISA PITTMAN, LPN; | * | |
| DOLORES THOMPSON, LPN; M. PARKER; | * | |
| C. BIBBENS; B. MONTGOMERY; | * | |
| CMA LAWSOM; OPSO DEPS. JOHN/JANE | * | |
| DOES 1-5; MEDICAL STAFF MEMBERS | * | |
| JOHN/JANE DOES 6-10. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

1.      This is a case about yet another tragic, unnecessary, and preventable death at the Orleans

Parish Sheriff's Office.  On October 27, 2017 Narada Mealey was arrested and taken into the

custody of the Orleans Parish Sheriff because of a Jefferson Parish warrant for a misdemeanor

probation violation.  As is the case with a growing number of Americans, Mr. Mealey suffered

from an addiction to opioids.  After two days in the Intake Processing Center, Mr. Mealey started

to show signs of severe withdrawal.  Mr. Mealey also had a history of severe abdominal issues,

including ulcers, that had required medical treatment in the past.  Mr. Mealey reported his

worsening symptoms to medical staff at the IPC, but they failed to provide him the care he

needed.  Mr. Mealey's condition worsened into a full-blown medical emergency requiring immediate surgery, but the staff at the jail failed to route Mr. Mealey to the hospital until he went into cardiac arrest sitting in a chair in the medical unit.  He ultimately died.  The defendants herein are liable for his death.

## I.     JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983, based on the Eighth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1988.  Jurisdiction is founded on 28 U.S.C. § 1331, and the aforementioned statutory and constitutional provisions.  Plaintiffs also invoke supplemental jurisdiction over claims under state constitutional and statutory law pursuant to 28 U.S.C. §1367.

## II.     PARTIES

### (Plaintiffs)

3.      **NATASHA TOLBERT** is an adult citizen of the United States and is domiciled in the Eastern District of Louisiana.  She brings this claim on behalf of her minor children, N.E.T., N.T., and N.L.M., who are the natural born children of the decedent, Narada Mealey.

4.      **BRIDGET ARMSTRONG** is an adult citizen of the United States and is domiciled in the Eastern District of Louisiana.  She brings this claim on behalf of her minor child, N.A., who is the natural born child of the decedent, Narada Mealey.

### (Defendants)

**Named defendants herein are:**

5.      **MARLIN N. GUSMAN**, in his individual and official capacity as Sheriff of Orleans Parish, is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.  At all times described herein, he was the Sheriff of Orleans Parish and, as such, was

responsible for the hiring, training, supervision, discipline, and control of the deputies under his command, as well as medical personnel.  He was responsible for all actions of OPSO staff.   He was also responsible for the supervision, administration, policies, practices, customs, and operations of the Orleans Parish Sheriff's Office and its correctional facilities.  He was and is a final policy maker.  He is liable both directly and vicariously for the actions complained of herein.

6.      **CORRECT CARE SOLUTIONS, LLC**, was at all relevant times the entity with which the Orleans Parish Sheriff's Office contracted to provide medical and mental health services to prisoners at the Orleans Parish Jail, including the Intake Processing Center.  **CORRECT CARE SOLUTIONS** was responsible for providing all staffing, training, policies and procedures for all medical and mental health personnel at OPSO.

7.      **ROGELIO PEREZ**, **RN**, in his individual and official capacity as a registered nurse with **Correct Care Solutions, LLC ("CCS")**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **PEREZ** was assigned as a nurse at the Intake Processing Center where Mr. Mealey died.  At all pertinent times he was responsible for providing care to detainees like Mr. Mealey and for supervising and overseeing the job performance of other medical personnel operating at IPC.

8.      **DAVID OATES, RN**, in his individual and official capacity as a registered nurse with **CCS**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.   Defendant **OATES** was assigned as a nurse at the Intake Processing Center where Mr. Mealey died.   At all pertinent times he was responsible for providing care to detainees like Mr. Mealey and for supervising and overseeing the job performance of other medical personnel operating at IPC.

9.    **PAMMALIER WALKER,** in her individual and official capacity as a Nurse Practitioner with **CCS**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.  **WALKER** was assigned as a Nurse Practitioner at the Intake Processing Center where Mr. Mealey died.  At all pertinent times, she was responsible for providing care to detainees like Mr. Mealey and for supervising and overseeing the job performance of other medical personnel operating at IPC.

10.    **LISA PITTMAN,** in her individual and official capacity as an LPN with **CCS**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **PITTMAN** was working as an LPN at IPC when Mr. Mealey died.  She was responsible for providing him appropriate care.

11.    **DOLORES E. THOMPSON,** in her individual and official capacity as an LPN with **CCS**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **THOMPSON** was working as an LPN at IPC on the day when Mr. Mealey died.  She was responsible for providing him appropriate care.

12.    **M. PARKER**, in her individual and official capacity as a health care professional with **CCS**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **PARKER** was working as a health care professional at IPC on the day when Mr. Mealey died.  She was responsible for providing him appropriate care.

13.    **C. BIBBENS**, in her individual and official capacity as a health care professional with **CCS**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **BIBBENS** was working as a health care professional at IPC on the day when Mr. Mealey died.  She was responsible for providing him appropriate care.

14.    **B. MONTGOMERY**, in her individual and official capacity as a health care professional with **CCS**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **MONTGOMERY** was working as a health care professional at IPC on the day when Mr. Mealey died.  She was responsible for providing him appropriate care.

15.    **CMA LAWSON**, in her individual and official capacity as a health care professional with **CCS**, is an adult citizen of the State of Louisiana and, on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **LAWSOM** was working as a Certified Medical Assistant at IPC on the day when Mr. Mealey died.  She was responsible for providing him appropriate care.

16.    **OPSO DEPS. JOHN/JANE DOES 1-5,** in their individual and official capacities as Orleans Parish Sheriff's Deputies, are adult citizens of the State of Louisiana and, on information and belief, are domiciled in the Eastern District of Louisiana.  At all pertinent times, defendants **JANE/JOHN DOES 1-5** were employed by OPSO as correctional officers assigned to the IPC. On information and belief, defendants **JOHN/JANE DOES 1-5** failed to monitor Mr. Mealey and/or to provide immediate referral to medical as his condition worsened.

17.    **MEDICAL STAFF MEMBERS JOHN/JANE DOES 6-10**, in their individual and official capacities as employees of **CCS**, are adult citizens of the State of Louisiana and, on information and belief, are domiciled in the Eastern District of Louisiana.  At all pertinent times, defendants **JANE/JOHN DOES 6-10** were employed by **CCS** as medical professionals assigned to the IPC.  On information and belief, defendants **JOHN/JANE DOES 6-10** failed to monitor and to provide appropriate care to Mr. Mealey, who died as a result.

### III.    FACTUAL ALLEGATIONS

18.    On or about October 27, 2017, Narada Mealey was arrested in Orleans Parish on a warrant for a misdemeanor probation violation out of Jefferson Parish.  He was booked into OPSO custody.

19.    Mr. Mealey was taken to the OPSO's Intake Processing Unit ("IPC"), where he would be held for the next two days.  During this time, he was never provided a bed on which to sleep, and was instead expected to sleep in a chair or on the concrete floor without bedding.

20.    Shortly after he entered OPSO custody, Mr. Mealey began to complain to staff about abdominal pain, sickness, and nausea.  Despite his repeated reports of illness, the defendants failed to provide him appropriate care and were deliberately indifferent to his medical needs.

21.    On October 28, 2017, at approximately 9:45 PM, Mr. Mealey advised defendant LPN **DOLORES THOMPSON** that he had severe abdominal pain and had been vomiting.  Other than a cursory exam, **THOMPSON** took no action in response to these complaints.

22.    A few hours later, at 1:00 AM on October 29, 2017, Mr. Mealey again complained of severe abdominal pain and nausea.  Instead of reporting these symptoms to a health care provider, **THOMPSON** again took no action.

23.    At 2:30 AM on October 29, 2017, Mr. Mealey advised defendant **DAVID OATES** that he had been snorting heroin prior to his admission to the jail.  Mr. Mealey further advised defendant **OATES** that he was extremely sick and, on information and belief, requested that he be taken to a hospital.

24.    Defendant **OATES** advised defendant **PAMMALIER WALKER**, who, instead of transferring Mr. Mealey to a hospital, signed an order initiating CCS's Clinical Opiate Withdrawal Symptom ("COWS") protocol.  The COWS protocol provided that a patient would

be given acetaminophen, an anti-diarrheal medication, and anti-nausea medications. Importantly, this protocol also required that the patient's vitals be checked at least once every eight (8) hours and any changes in symptoms be documented.  A healthcare provider was to be notified if the patient's symptoms worsened.

25.    At approximately 3:30 AM on October 29th, defendant **OATES** completed a COWS worksheet for Mr. Mealey.  Mr. Mealey was given the COWS protocol medicines around this time.

26.    Contrary to the COWS protocol, defendants **OATES** and **THOMPSON** failed to monitor Mr. Mealey's vital signs and physical symptoms as required.  On information and belief, Mr. Mealey continued to complain to these two defendants and others of severe abdominal pain, nausea, and vomiting at various points during the night.  Such symptoms were signs that Mr. Mealey was suffering a healthcare emergency warranting immediate transfer to a hospital, but they were ignored and disregarded by these defendants.

27.    On information and belief, at approximately 7:00 AM on October 29, 2017, defendants **PEREZ**, **PITTMAN**, **PARKER**, **BIBBENS**, **MONTGOMERY**, and **LAWSON** (sometimes referred to herein as the **"Day Shift Defendants")** started their shift at the IPC.  They assumed care of Mr. Mealey at this time.

28.    Mr. Mealey continued to complain of severe abdominal pain and nausea to defendants **PEREZ**, **PITTMAN**, **PARKER**, **BIBBENS**, **MONTGOMERY**, and **LAWSON**.  Despite his continued reports of severe pain, these defendants failed to follow the COWS protocol for Mr. Mealey or to route him to the hospital.  These defendants failed to check his vitals at any point in time.  A check of Mr. Mealey's vitals, as was required by the COWS protocol and warranted by his reported symptoms, would have shown that Mr. Mealey was in a medical crisis that required

immediate hospitalization.  However, these defendants ignored their duties to Mr. Mealey and his repeated pleas for help.

29.     On information and belief, throughout the morning of October 29, 2017, Mr. Mealey made several calls to his family members, reporting to them that he was in tremendous pain, felt like he was going to die, and that medical personnel at the jail were refusing to provide him care. Mr. Mealey's family members attempted to call the jail numerous times to get him help, and one of his family members actually went to the jail to try to get Mr. Mealey the medical attention he needed.  Despite these pleas for help, the medical and security staff at the jail continued to refuse to provide appropriate medical care for Mr. Mealey's on-going medical emergency.

30.     At approximately 1:17 PM on October 29, 2017, Mr. Mealey again advised defendant **PEREZ** and other **Day Shift Defendants** of his severe abdominal pain and nausea.  Despite these symptoms and the fact that he was on the COWS protocol and his vitals had not been checked for more than eight hours, defendant **PEREZ** and the other **Day Shift Defendants** did nothing other than give Mr. Mealey an anti-nausea drug and some acetaminophen.  On information and belief, a check of Mr. Mealey's vitals at this time would have shown that he was in an on-going medical crisis requiring immediate hospitalization.  However, **PEREZ** and the other **Day Shift Defendants** ignored the warning signs and failed to take Mr. Mealey's vitals.

31.     At approximately 2:00 PM, Mr. Mealey collapsed on the floor of IPC and began vomiting violently.  **PEREZ** and other **Day Shift Defendants** were alerted to this event, which showed that Mr. Mealey's condition was deteriorating and he was not responding to treatment. However, **PEREZ** and the other **Day Shift Defendants** once again failed to check Mr. Mealey's vitals or otherwise respond to the unfolding medical crisis that would soon take Mr. Mealey's life.

32.     At approximately 2:35 PM, Mr. Mealey was taken to the medical unit.  There, he was seated in a chair.  At approximately 2:40 PM, Mr. Mealey collapsed.  He apparently went into cardiac arrest, with no pulse and no respiration.

33.     After his collapse, Mr. Mealey was finally routed to the hospital.  There, doctors diagnosed him with a perforated gastric ulcer that was bleeding out.  Mr. Mealey was in shock and suffering from sepsis of the blood.  His Glasgow coma scale score was 3 upon admission to the hospital, and he never regained consciousness.  Despite the best efforts of hospital staff, Mr. Mealey died on November 2, 2017.  The Orleans Parish Coroner found that the primary cause of death was complications from a perforated gastric ulcer.

34.     On information and belief, perforation of a gastic ulcer is a known risk for people who are detoxifying from opioid abuse.  A perforated gastric ulcer is considered a medical emergency that is frequently fatal if not treated promptly.

35.     On information and belief, it was common practice at the time of Mr. Mealey's death for jail medical staff, including the defendants herein, to fail to follow the COWS protocol for detainees who were detoxifying.  Both **CCS** and defendant **GUSMAN** were aware of this pattern and practice of failing to follow COWS protocols by failing to properly monitor detoxifying inmates.

36.     On information and belief, Mr. Mealey complained to one or more deputies **JOHN** and **JANE DOES #1-5** and on or more medical defendants **JOHN** and **JANE DOES #6-10** about his deteriorating condition on October 28 and 29, 2017.  However, these deputies and medical defendants deliberately disregarded his complaints and failed to notify appropriate staff or take other action.

37.     The failures culminating in Narada Mealey's death—specifically, a failure to provide adequate health care—is a long-term problem at OPSO.  There is a longstanding pattern and practice of both guards and medical staff ignoring and disregarding the serious medical conditions of inmates.  All defendants in this matter were aware of the problems with healthcare at OPSO but failed to address them with adequate reforms.

38.     There is a well-documented pattern and practice at OPSO of inadequate medical staffing and failing to monitor sick inmates, including those suffering from withdrawal symptoms, thereby permitting and in fact creating unconstitutional risks to inmate safety.  There is further a pattern and practice of failing to provide constitutionally adequate healthcare to inmates housed in OPSO facilities.  There is also a pattern and practice of failing to adhere to policies and procedures.  There is also a pattern and practice of failing to monitor, supervise, and discipline for OPSO deputies' and medical staff's failure to follow policies and procedures.

39.     The defendants, particularly defendants **GUSMAN** and **CCS**, knew, must have known, or should have known of these unconstitutional patterns and practices.  There are numerous tragic examples of inmates under these defendants' care, custody, and control being subjected to unconstitutional risks of harm, which frequently results in serious injury to the inmate or even death.

40.     At the time of the detention of Narada Mealey by OPSO, the defendants knew, must have known, or should have known of serious deficiencies in the policies, practices and procedures at the jail related to medical screening and the care and observation of prisoners generally.  Defendants were also aware of the inadequate staffing and inadequate training and supervision of medical and correctional staff with regard to medical problems of inmates.  Despite their knowledge of these serious deficiencies, the defendants failed to make necessary changes to

policies, procedures, training, supervision or staffing or to intervene to see that Narada Mealey

and others in their custody were provided adequate treatment for serious health needs.

41.     On information and belief, defendants herein have been involved in other incidents

involving inadequate supervision and treatment for prisoners with serious medical needs, which

resulted in serious harm, injury, suffering and/or death to inmates in their care. Yet few of these

defendants and/or other OPSO/CCS staff who were similarly derelict in their duties, were

appropriately disciplined or held accountable for their acts or omissions.  In addition, those

responsible for training and supervising OPSO staff have failed in their own responsibilities to

provide adequate care to prisoners, and have not themselves been subject to disciplinary action

or accountability for failing in their supervisory and/or training responsibilities.

42.     There have been numerous reports placing all defendants on notice regarding the

unconstitutional conditions at the jail.

43.     On April 23, 2012, the Department of Justice issued a findings letter, based on an on-

going investigation of OPP.  This letter documented serious constitutional violations and policies

and practices that violated generally accepted standards of care for custodial institutions.

44.     In its April 23, 2012 letter, the DOJ found that "the Orleans Parish Prison is deliberately

indifferent to prisoners with serious medical and mental health needs. . . .  Prisoners with

physical illness, either chronic or emergent, experience unreasonable barriers in accessing care.

As a result, prisoners suffer during their incarceration and are returned to the community, in far

too many cases, sicker and less equipped to avoid future involvement with the criminal justice

system than when they entered."

45.     In 2012, a class-action Complaint asserting unconstitutional conditions at OPSO facilities

was filed against defendant **GUSMAN**.  The filings and proceedings during that litigation

include multiple reports by security and medical experts, a consent judgment signed by

Defendant **GUSMAN**, testimony at a three-day Fairness Hearing, and, finally, Judge Lance

Africk's lengthy and detailed order approving the consent judgment.  *See Jones et al. v. Gusman*

*et al.*, EDLA #12-cv-859.

46.    Judge Africk signed his order approving the consent judgment governing the operations

of OPSO on June 6, 2013, over four years before Mr. Mealey's death.  The judgment included

numerous findings and requirements regarding medical care at OPSO.  The requirements set

forth in the Order were designed to bring OPSO facilities into compliance with the constitution.

47.    Judge Africk's Order outlined a number of "stark, sometimes shocking, deficiencies in

OPP's medical and mental health care system."  The judge discussed his findings related to

health care at OPP by concluding that "[t]he evidence presented shows that a lack of treatment

altogether, rather than inadequate treatment, contributes to severe deficiencies in medical and

mental health care at OPP."  He noted that "'[a] prison that deprives inmates of basic sustenance,

including adequate medical care, is incompatible with the concept of human dignity and has no

place in civilized society.'"  The judge specifically found that "[t]he consent judgment provisions

on mental and medical health care are necessary to remedy the violation of federal rights, and

they are the least intrusive means of doing so."

48.    Judge Africk noted constitutional deficiencies in OPSO's treatment of detoxifying

inmates, including that OPSO failed to monitor them consistently and failed to respond

adequately to life threatening symptoms.  Judge Africk also made findings related to the

"dramatically insufficient staffing" of mental and medical health care providers.  The Judge

noted that the ratio of nurses to prisoners makes it "impossible for the nurses to adequately

evaluate and chart patients, administer medications, respond to emergencies, provide suicide monitoring, gather sick call information, and provide basic nursing services."

49.     Defendants **GUSMAN** and **CCS** knew, must have known, or should have known of these deficient conditions, including inadequate medical care, as described in the previous reports and litigation.  These conditions persist to this day at OPSO facilities.  But these defendants have failed to make appropriate and necessary changes in policies, procedures, staffing, training and/or facilities to protect inmates from harm, including harm from a failure to provide appropriate medical care.  These defendants also failed to ensure that appropriate supervision and disciplinary action was taken in situations where prisoners suffered or died as the result of inadequate or inappropriate care or treatment by OPSO staff.

50.     Defendants knew, must have known, or should have known that the standard of care for those experiencing health crises could not be met by the policies, procedures, or staffing of the OPSO and **CCS** but failed to take appropriate steps to see that Narada Mealey or other inmates in similar situations received appropriate and adequate care in accordance with community standards of care.

51.     Furthermore, despite their knowledge of these conditions, the defendants ratified or condoned acts or omissions by OPSO and **CCS** staff which caused serious harm, suffering and death to prisoners at OPSO, and maintained a custom and practice whereby there was no accountability for OPSO or **CCS** staff who mistreated prisoners or who violated policies, procedures or standards of care for prisoners.  The defendants' actions and failures to act were a direct and motivating force that caused the death of Narada Mealey on November 2, 2017.

52.     Defendants **GUSMAN**, as Sheriff of Orleans Parish, and **MAYNARD**, as the Compliance Director of OPSO, were ultimately responsible for hiring, training, supervising,

disciplining and/or retaining all employees at the OPSO.  They were responsible for all policies and procedures at IPC.  They were responsible for each and every other defendant named herein.

53.     Defendant **CCS** is ultimately responsible for hiring, training, supervising, disciplining and/or retaining the medical defendants.  It is further responsible for policies, procedures, and customs of the medical personnel of the OPSO.  Further, **CCS** had the responsibility and duty for the diagnosis, oversight, review, monitoring, supervision, and evaluation of Narada Mealey's medical needs, the delivery of care for him, and the policies and procedures governing his treatment.  **CCS's** actions with respect to the care of Narada Mealey exhibited deliberate indifference to Mr. Mealey's serious medical needs.  Furthermore, and in the alternative, **CCS's** care of Narada Mealey fell below the applicable standard of care and was negligent.  **CCS** is also liable under the doctrine of respondeat superior for both the constitutional violations and the state-law torts of its employees, as described herein.

54.     Defendants **OATES, WALKER, THOMPSON, PEREZ, PITTMAN, PARKER, BIBBENS, MONTGOMERY**, and **LAWSON** were responsible for providing adequate and appropriate medical care for Narada Mealey, including routing him to the hospital in case of a medical emergency.  They were further responsible for the documentation and paperwork necessary for continuity of care of Narada Mealey, including evaluation and monitoring of his withdrawal symptoms under the COWS protocol.  These defendants failed in their responsibility to ensure that Narada Mealey was in a safe, appropriate environment and that he was receiving care for his medical needs.  These defendants' actions with respect to the care of Narada Mealey exhibited deliberate indifference to Mr. Nealey's serious medical needs.  Furthermore, and in the alternative, these defendants' care of Narada Mealey fell below the applicable standard of care and was negligent.

55.     Defendant OPSO employees **JANE** and **JOHN DOES #1-5,** are each persons who had the responsibility and duty to monitor and take action on Narada Mealey's behalf when he reported to them serious medical symptoms.  Each of these defendants failed in their duty to him, exhibiting deliberate indifference and/or negligence.

56.     Defendant **CCS** employees **JANE** and **JOHN DOES #6-10,** are each persons who had the responsibility and duty to monitor and take action on Narada Mealey's behalf when he reported to them serious medical symptoms.  Each of these defendants failed in their duty to him, exhibiting deliberate indifference and/or negligence.

57.     The failures of the above-described defendants to comply with their duties and their breach of the applicable standards of care with respect to Narada Mealey while he was in their care resulted in his death.

58.     Policy making defendants, including **GUSMAN** and **CCS** knew that the policies, practices, and procedures with respect to health care at OPSO were inadequate and posed a danger of serious bodily harm to detainees at OPSO.  However, they took no action to correct these policies, practices, and procedures.  Their failure to do so ratified and condoned these practices.  Their inaction with respect to these policies, practices, and procedures was motivated by deliberate indifference and/or culpable negligence to the serious risks to detainees.

59.     Narada Mealey's risk of serious harm and/or death was known, obvious and must have been known, and/or should have been known to all defendants named herein.  All defendants failed to take appropriate action and necessary measures to protect and preserve Narada Mealey's life and safety, as set forth herein.  All defendants' actions as described herein were taken with deliberate indifference to Narada Mealey's risk of serious bodily harm and/or failed to meet the applicable standard of care and were reckless and/or negligent.

60.     The defendants are responsible jointly and in solido for the death of Narada Mealey.

61.     The deceased, Narada Mealey, is the father of the minor children, N.E.T., N.T., and N.L.M., whose claims are brought by their birth mother, Natasha Tolbert.  Narada Mealey formally acknowledged these three minor children prior to his death.

62.     The deceased, Narada Mealey, is the father of the minor child, N.A., whose claims are brought by his birth mother, Bridget Armstrong.  Narada Mealey is identified as the father on the Birth Certificate of N.A.

63.     Pursuant to Louisiana Civil Code Article 2315.1, if a person who has been injured by offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense shall survive for a period of one year from the death of the deceased in favor of his surviving child or children of the deceased. Natasha Tolbert, on behalf of her minor children identified above, and Bridget Armstrong, on behalf of the minor child N.A., bring a survival action based on the death of Narada Mealey.

64.     Pursuant to Louisiana Civil Code Article 2315.2, if a person dies due to the fault of another, suit may be brought by surviving children to recover damages which they sustained as a result of the death.  N.E.T., N.T., and N.L.M. are surviving minor children of Narada Mealey.  A wrongful death claim is brought on their behalf by their mother, Natasha Tolbert.  N.A. is a surviving child of the deceased, Narada Mealey.  Bridget Armstrong brings a wrongful death claim on behalf of the minor child N.A..

### IV.     FIRST CAUSE OF ACTION

65.     Plaintiffs repeat and re-allege each and every allegation of this Complaint.

66.     The defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Narada

Mealey of his constitutional rights and did deprive him of said rights, specifically, the right of

Narada Mealey to a reasonably safe and secure place of detention, reasonable and adequate

medical care, the right to be free from cruel and unusual punishment, and the right to due process

and equal protection of the laws as protected by the Eighth and Fourteenth Amendments and

Article IV (Privileges and Immunities Clause) of the United States Constitution and 42 U.S.C. §

1983.

67.     At all times pertinent herein, the defendants, acting individually and collectively, acted

unreasonably, recklessly, and with deliberate indifference and disregard for the constitutional

and civil rights and life and serious medical needs of the deceased, Narada Mealey.

68.     The defendants' actions were reckless, willful, wanton, and/or malicious.

69.     Defendants, individually and collectively, had the duty and ability to intervene to prevent

the violations of Narada Mealey's rights,  as described herein, but failed to do so.

70.     Plaintiffs further allege that such acts as alleged herein were the proximate cause and

cause in fact of the injuries sustained and the death of Narada Mealey and the damages incurred

thereby.

71.     Defendant **CCS** is liable directly and under the doctrine of respondeat superior for the

constitutional torts of its employees committed in the course and scope of their employment.

## V.     SECOND CAUSE OF ACTION

72.     Plaintiffs repeat and re-allege each and every allegation of the Complaint.

73.     Defendants **GUSMAN** and **CORRECT CARE SOLUTIONS, LLC,**  acting

individually and collectively, established, condoned, ratified, and encouraged customs, policies,

patterns, and practices that directly and proximately caused the deprivation of the civil and

constitutional rights of the deceased, as alleged herein, and the damages and injuries described

herein, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and 42

U.S.C. § 1983.  They did so with deliberate indifference to the rights of detainees at OPSO

facilities.

74.     In addition to the injuries sustained by the plaintiffs herein, the deliberate indifference of

defendants **GUSMAN** and **CORRECT CARE SOLUTIONS, LLC,** in their official capacities

as Sheriff of Orleans Parish and the medical provider for Orleans Parish Jail, to the serious

medical needs of detainees under their custody and control has resulted in numerous other

instances of detainees suffering serious and oftentimes fatal injuries and illnesses.

75.     At all times pertinent herein the defendants acted unreasonably and with deliberate

indifference and disregard for the constitutional and civil rights to life and safety of the deceased,

Narada Mealey.  The actions of the defendants were malicious, willful, wanton and reckless.

76.     Plaintiffs further allege that such acts and omissions as alleged herein were the proximate

cause and cause in fact of the death of Narada Mealey, the injuries suffered by the plaintiffs, and

the damages incurred.

## VI.     THIRD CAUSE OF ACTION

77.     Plaintiffs repeat and re-allege each and every allegation of the Complaint.

78.     The supplemental jurisdiction of the Court is invoked for all claims under state law.

79.     At all times described herein, the defendants, individually and collectively, acted

negligently, with negligence, gross negligence, and/or intentionally in denying reasonable and

necessary medical care to Narada Mealey and failing to properly monitor him, thereby inflicting

physical injury and severe emotional, mental and physical pain and suffering upon him, in

violation of Louisiana constitutional and statutory law.

80.     The actions and inactions of the defendants caused the wrongful death of Narada Mealey.

At all pertinent times the defendant employees of **GUSMAN**, in his official capacity, and the

defendant employees of **CCS** were acting in the course and scope of their employment.  The

defendant sheriff **GUSMAN,** in his official capacity**,** and/or **CCS** are vicariously liable for the

injuries and damages incurred herein as a result of their actions.

81.     The defendants, **CORRECT CARE SOLUTIONS, OATES, WALKER,**

**THOMPSON, PEREZ**, **PITTMAN**, **PARKER**, **BIBBENS**, **MONTGOMERY**, and

**LAWSON** each acted in derogation of their duties as medical professionals and their treatment

of Narada Mealey was beneath the standard of care in the community.

82.     All defendants named herein are liable for the wrongs complained of herein by virtue of

encouraging, aiding, abetting, counseling, ratifying and condoning the commission of the afore-

described acts, by their failure to properly administer, organize, and staff the medical and

correctional program and for the failure to properly screen, hire, train, supervise, and discipline

persons under their supervision and control whose acts and omissions contributed to the death of

Narada Mealey.

83.     The defendants are liable individually and jointly (in solido) for their actions as alleged

herein.

84.     Plaintiffs further allege that the above-described actions and omissions were the

proximate cause and cause in fact of the injuries sustained herein.

## VII.    DAMAGES

85.     As a result of the actions of the defendants as described above, damages have been

incurred as follows:

A.      Narada Mealey (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life, for which plaintiffs are entitled to recover.

B.      The children of Narada Mealey suffered emotional pain and suffering, past, present, and future; loss of support; and the loss of love, affection, and companionship of their father, Narada Mealey.

## IX.     PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray that after due proceedings are had there be judgment rendered herein in plaintiffs' favor and against all defendants individually and jointly, as follows:

1.      Compensatory and punitive damages as prayed for herein;

2.      Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988 and all costs of these proceedings and legal interest;

3.      All other relief as appears just and proper to this Honorable Court.

Respectfully submitted,

/s/ Stephen Haedicke
**STEPHEN J. HAEDICKE** (# 30537)
1040 Saint Ferdinand Street
New Orleans, LA 70117
(504)291-6990 Telephone
(504)291-6995 Fax
Stephen@haedickelaw.com

Attorney for Natasha Tolbert

/s/ Gary Bizal
**GARY W. BIZAL** (#1255)
639 Loyola Ave., #1820
New Orleans, LA 70113
P: 504.525-1328
F: 504.525-1353
gary@garybizal.com

Attorney for Bridget Armstrong


## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.


/s/ Stephen Haedicke