# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

NATASHA TOLBERT ET AL.                    CIVIL ACTION

VERSUS                                    NO: 18-8359 C/W 18-10053

MARLIN GUSMAN ET AL.                      SECTION: "H"(1)

## ORDER AND REASONS

Before the Court is Defendants Pammalier Walker, David Oates, Rogelio Perez, Dolores Thompson, Lisa Pittman, Monique Lawson, and Correct Care Solutions, LLC's Motion for Summary Judgment (Doc. 71). For the following reasons, the Motion is GRANTED IN PART.

## BACKGROUND

Plaintiffs Natasha Tolbert, Bridget Armstrong, and India Butler bring this action on behalf of their minor children for the wrongful death of Narada Mealey, an inmate at the Orleans Justice Center ("OJC").[1] Plaintiffs allege that Mealey did not receive proper medical treatment while incarcerated, resulting in his death. Plaintiffs bring state law medical malpractice claims

---

[1] Case number 18-8359 brought by Tolbert and Armstrong was consolidated with case number 18-10053 brought by India Butler.

1

and federal law claims under 42 U.S.C. § 1983 against two groups of defendants: those in law enforcement and those involved in the medical treatment of Mealey. In this motion, defendants involved in Mealey's medical treatment—Pammalier Walker, David Oates, Rogelio Perez, Dolores Thompson, Lisa Pittman, Monique Lawson, (collectively, "the Individual Defendants"), and Correct Care Solutions, LLC ("CCS")—move for summary judgment on Plaintiffs' § 1983 claims against them. Plaintiffs oppose.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish

---

[2] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

Movants set forth several arguments for judgment in their favor: (1) the Individual Defendants are entitled to qualified immunity from Plaintiffs' claims, (2) Plaintiffs cannot show that any of the Individual Defendants were deliberately indifferent to Mealey's medical needs; (3) Plaintiffs cannot establish a § 1983 claim against CCS through vicarious liability or under the *Monell* standard; and (4) Plaintiffs are not entitled to punitive damages.

Plaintiffs concede that the § 1983 claims against Defendants Walker, Oates, Thompson, and Pittman should be dismissed. However, they argue that summary judgment should be denied as to their claims against Defendants Perez, Lawson, and CCS. This Court will consider each argument in turn.

---

[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

### A. Qualified Immunity

Perez and Lawson argue that they are entitled to qualified immunity from Plaintiff's claims. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[10] Although Movants are not government employees, they argue that they are entitled to qualified immunity because they worked in a public institution alongside government employees. In so arguing, Movants rely on the Fifth Circuit's opinion in *Perniciaro v. Lea*, 901 F.3d 241 (5th Cir. 2018), in which it held that two privately employed doctors working at a public prison were entitled to assert qualified immunity. In response, Plaintiffs contend that the facts of this case are more in line with the facts of *Richardson v. McKnight*, 521 U.S. 399 (1997), in which the Supreme Court held that prison guards who were employees of a private prison management firm were not entitled to assert qualified immunity.

Whether a private actor may assert qualified immunity depends on two things: "(1) principles of tort immunities and defenses applicable at common law around the time of § 1983's enactment in 1871 and (2) the purposes served by granting immunity."[11] As to the second factor,

> [t]he Supreme Court has identified three purposes served by qualified immunity: (1) preventing unwarranted timidity in the exercise of official duties; (2) ensuring that highly skilled and qualified candidates are not deterred from public service by the

---

[10] Heaney v. Roberts, 846 F.3d 795, 801 (5th Cir. 2017) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).

[11] Perniciaro v. Lea, 901 F.3d 241, 251 (5th Cir. 2018) (citing Filarsky v. Delia, 566 U.S. 377, 383–84 (2012); Richardson v. McKnight, 521 U.S. 399, 403–04 (1997)).

4

threat of liability; and (3) protecting public employees—and their work—from all of the distraction that litigation entails."[12]

In *Richardson*, the Supreme Court considered whether two prison guards who were employed by a private prison management firm could assert qualified immunity.[13] First, the Court held that history did not reveal a firmly rooted tradition of immunity applicable to privately employed prison guards.[14] Then, it found that the second factor also did not weigh in favor of allowing the prison guards to assert qualified immunity.[15] The Court noted that the prison firm at issue was "systematically organized to perform a major administrative task for profit," and it did so independently and with little government supervision or direction.[16] The Court held that where a private company subject to ordinary market pressures operates a prison, unwarranted timidity is less likely present.[17] It explained that

> marketplace pressures provide the private firm with strong incentives to avoid overly timid, insufficiently vigorous, unduly fearful, or "nonarduous" employee job performance. And the contract's provisions—including those that might permit employee indemnification and avoid many civil-service restrictions—grant this private firm freedom to respond to those market pressures through rewards and penalties that operate directly upon its employees.[18]

---

[12] *Id.*
[13] *Richardson*, 521 U.S. at 402.
[14] *Id.* at 407.
[15] Id. at 412.
[16] *Id.* at 409.
[17] *Id.*
[18] *Id.* at 410.

The Court further explained that this privatization helps to "ensure that talented candidates are not deterred by the threat of damages suits from entering public service" because comprehensive insurance-coverage requirements increase "the likelihood of employee indemnification and to that extent reduce[] the employment-discouraging fear of unwarranted liability potential applicants face."[19] Finally, the Court held that although lawsuits may distract employees from their duties, this risk alone did not constitute sufficient grounds for immunity. The Court concluded that "[t]he organizational structure [of the private prison management firm was] one subject to the ordinary competitive pressures that normally help private firms adjust their behavior in response to the incentives that tort suits provide—pressures not necessarily present in government departments."[20]

In *Perniciaro*, the private actors were Drs. Thompson and Nicholl, psychiatrists employed by Tulane University who provided services at Eastern Louisiana Mental Health System ("ELMHS") pursuant to a contract between Tulane and the State.[21] As to the first factor, the Fifth Circuit held that the general principles of immunity at common law supported the right of the psychiatrists to raise the defense of qualified immunity where they were private individuals working part-time in a public institution alongside government employees. The court noted that "it is clear that their public counterparts would be entitled to assert qualified immunity."[22] As to the second factor, it held that the purposes of qualified immunity also weighed in

---

[19] *Id.* at 411.
[20] *Id.* at 412.
[21] *Perniciaro*, 901 F.3d at 246.
[22] *Id.* at 252.

favor of permitting Drs. Thompson and Nicholl to assert that defense. In so holding, the court distinguished the facts before it from those in *Richardson*.

> [T]he market forces assumed in *Richardson*'s reasoning are much weaker here. First, the state, not Tulane, oversees the operation of ELMHS and the services that Drs. Thompson and Nicholl provide there. ELMHS is a state-run facility, operated pursuant to state policies and overseen by a state employee. Dr. Thompson reports directly to [a state employee], not to anyone at Tulane. . . . Whereas the Supreme Court in *Richardson* concluded that the private prison guards there at issue "resemble those of other private firms and differ from government employees," here we conclude just the opposite. When Drs. Thompson and Nicholl go to work at ELMHS, they act within a government system, not a private one. The market pressures at play within a purely private firm simply do not reach them there. Furthermore, their direct employer, Tulane University, is not "systematically organized" to perform the "major administrative task" of providing mental-health care at state facilities.[23]

The court similarly noted that—unlike the private firm in *Richardson* that could offset the risk of litigation with higher pay and better benefits—Drs. Thompson and Nicholl were precisely the types of highly skilled individuals who might choose opportunities that carry less risk of liability if not offered immunity for their work in public service.[24] "This is particularly so where, as here, the private individuals work in close coordination with government employees who may leave them holding the bag—facing full liability for actions taken in conjunction with government employees who enjoy immunity for the same activity."[25] Finally, the court held that "where private individuals work

---

[23] *Id.* at 253 (internal citation omitted).
[24] *Id.*
[25] *Id.* at 254 (internal quotations omitted).

alongside public employees," the interest in protecting them from "frequent lawsuits that might distract them from their official duties" is far greater.[26]

In this case, it is undisputed that CCS contracted with the Orleans Parish Sheriff's Office and the City of New Orleans to "administer and manage health care services and related administrative services" at jails in the parish.[27] The contract between the parties requires CCS to maintain various types of liability insurance covering its operations and has a two-year term after which the parties must renew the agreement.

Movants argue that this case is more in line with *Perniciaro* because they work within a government system alongside government employees, report to the state on a quarterly basis, and comply with certain government standards including those set forth by a federal consent judgment. Unlike in *Perniciaro*, however, there is no indication that Defendants Perez and Lawson report directly to a state employee or work directly with medical professionals employed by the State. Here, Perez and Lawson work for CCS, and CCS was "systematically organized to perform a major administrative task for profit"— that is, the delivery of healthcare to certain detention centers in New Orleans. CCS is a private firm "subject to the ordinary competitive pressures that normally help private firms adjust their behavior in response to the incentives that tort suits provide."[28] Just as in *Richardson*, the market pressures will work to thwart the purposes of qualified immunity. Accordingly, the purposes of qualified immunity would not be served by granting it in this case, and this

---

[26] *Id.*

[27] Doc. 71-8.

[28] *Richardson*, 521 U.S. at 412.

Court finds that Defendants Perez and Lawson are not entitled to qualified immunity.

### B. Deliberate Indifference

Next, Movants argue that Plaintiffs cannot show that Perez or Lawson acted with deliberate indifference toward the medical needs of Mealey to succeed on a claim under § 1983. At the outset, the parties disagree on the proper standard for deliberate indifference in this case. Movants argue that a subjective standard for deliberate indifference applies—that is, that the defendants knew of and disregarded a substantial risk of harm. Plaintiffs argue that because Mealey was a pretrial detainee, an objective standard should apply—that is, that the defendants knew or should have known of the risk of harm.

In support of its argument that an objective deliberate indifference standard should apply to their claims, Plaintiffs rely on the Supreme Court's opinion in *Kingsley v. Hendrickson*.[29] *Kingsley* considered the appropriate standard for a § 1983 claim for excessive force by a pretrial detainee.[30] The Court held that an objective standard applied to the question of whether the force used against a pretrial detainee was unreasonable.[31] The Court stated that "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."[32]

---

[29] Kingsley v. Hendrickson, 576 U.S. 389, 135 S. Ct. 2466 (2015).
[30] *Id.* at 2473.
[31] *Id.*
[32] *Id.* at 2473–74.

Plaintiffs argue that the holding in *Kingsley* applies broadly to any constitutional claim brought by a pretrial detainee.

This position, however, conflicts with binding Fifth Circuit law. After *Kingsley*, the Fifth Circuit applied a subjective deliberate indifference standard to a § 1983 claim by a pretrial detainee. In *Alderson v. Concordia Parish Correctional Facility*, the Fifth Circuit stated that:

> Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment. To succeed in a § 1983 action based on "episodic acts or omissions" in violation of Fourteenth Amendment rights, a pretrial detainee must show subjective deliberate indifference by the defendants. That is, the plaintiff must show that the official knew of and disregarded a substantial risk of serious harm.[33]

Accordingly, this Court is bound to apply a subjective standard here.

"A prison official shows deliberate indifference if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[34] A plaintiff can show deliberate indifference by showing that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[35]

---

[33] Alderson v. Concordia Par. Corr. Facility, 848 F.3d 415, 419–20 (5th Cir. 2017).

[34] Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

[35] *Alderson*, 848 F.3d at 422.

Plaintiffs argue that Perez, a registered nurse, and Lawson, a medical assistant, were deliberately indifferent when they failed to take any action—such as contacting a qualified medical provider or checking Mealey's vitals—between 2:00p.m. (when they were made aware of Mealey's condition by a deputy's emergency alert) and 2:40p.m. (when Mealey went into cardiac arrest). Plaintiffs allege that Perez and Lawson ignored Mealey's complaints despite their awareness that Mealey complained of abdominal pain, collapsed three times on his way to the medical office, vomited, and was too sick to get off the floor on his own. They argue that Perez and Lawson failed to take action in response to an obvious medical emergency.

Movants argue that Mealey's symptoms were consistent with opiate withdrawals for which they were treating Mealey and that Mealey reported a hernia from a few years ago that he thought might have been causing his pain. Therefore, Movants argue that they had no reason to believe that Mealey was at risk of serious harm. Movants also point out that Perez palpated Mealey's abdomen, found it soft to the touch, and left Mealey in a chair for observation.

This Court finds that there is a material issue of fact as to whether Lawson and Perez acted with deliberate indifference in response to Mealey's medical emergency. Courts have held that when gatekeepers to emergency care, such as RNs and medical assistants, knowingly disregard a prisoner's serious medical complaints, they act with deliberate indifference to that prisoner's medical needs.[36] Accordingly, summary judgment dismissing Plaintiffs' § 1983 claims against Perez and Lawson is inappropriate.

---

[36] *See* Rodrigue v. Morehouse Det. Ctr., No. 09-985, 2012 WL 4483438, at *6 (W.D. La. Sept. 28, 2012), *aff'd sub nom.* Rodrigue v. Grayson, 557 F. App'x 341 (5th Cir. 2014).

11

### C. Liability of CCS

Next, Movants argue that CCS cannot be vicariously liable for the constitutional torts of its employees. In *Monell v. Department of Social Services*, the Supreme Court held that the liability of municipalities and other local governments cannot be predicated on the doctrine of *respondeat superior*.[37] Several courts have extended this holding to private entities.[38] Plaintiffs argue, however, that the Fifth Circuit has never addressed whether private companies can be liable under a theory of *respondeat superior* for the constitutional torts of their employees, and they argue that there are compelling reasons to hold that they can.

Plaintiffs' arguments, however, go against the holdings of every circuit court that *has* considered the issue.[39] Indeed, even the opinion that Plaintiffs rely on in criticizing the application of *Monell* to private companies ultimately concluded that controlling law required it to hold that the *Monell* standard extends to private corporations.[40] Plaintiffs have not provided this Court with any case since *Monell* holding that a private entity can be liable under a *respondaet superior* theory. Accordingly, this Court declines Plaintiffs'

---

[37] Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).

[38] *See e.g.*, Lyons v. Nat'l Car Rental Sys., Inc. (of Delaware), 30 F.3d 240, 246 (1st Cir. 1994) ("Although the holding in *Monell* is framed so that it expressly applies only to local governments, the decision is based generally on the language and legislative history of § 1983, not on principles—such as sovereign or qualified immunity—applicable only to governmental entities. . . . These justifications are equally applicable to private corporations."); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012) ("[W]e see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law.").

[39] "Every one of our sister circuits to have considered the issue has concluded that the requirements of *Monell* do apply to suits against private entities under § 1983." *Tsao*, 698 F.3d at 1139 and cases cited therein.

[40] *See* Shields v. Illinois Dep't of Corrs., 746 F.3d 782, 786 (7th Cir. 2014).

12

invitation to be the first. CCS cannot be vicariously liable for the constitutional torts of its employees.

Therefore, to succeed in bringing a § 1983 claim against CCS, Plaintiffs must show "(1) the existence of an official policy or custom, (2) a policymaker's actual or constructive knowledge of the policy or custom, and (3) a constitutional violation where the policy or custom is the 'moving force.'"[41] Movants allege that Plaintiffs cannot make such a showing.

To prove that CCS has a policy that was the moving force behind the violation of Mealey's constitutional rights, Plaintiffs present the opinion of their expert, Celia Noehren R.N. Noehren opines that Mealey's treatment was a result of a pattern of constitutionally deficient medical care at the OJC that has been identified for years by monitors of a federal consent judgment.[42] For example, Noehren opines that CCS has ongoing problems with giving inmates access to qualified medical professionals, checking vitals in accordance with the opiate withdrawal protocol, accurate charting, and supervision of medical staff. Accordingly, Plaintiffs have presented sufficient evidence to create a material issue of fact as to their § 1983 claim against CCS.

### D. Punitive Damages

Finally, Movants move for dismissal of Plaintiffs' claim for punitive damages. Punitive damages may be awarded in an action under § 1983 when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected

---

[41] Valle v. City of Houston, 613 F.3d 536, 542 (5th Cir. 2010).
[42] *See* Jones v. Gusman, E.D. La. 12-cv-859, R. Doc. 81-2.

rights of others."[43] Movants argue that Plaintiffs cannot present evidence that Movants' conduct rises to this level. Plaintiffs argue that Perez and Lawson showed reckless or callous indifference when they ignored Mealey's medical emergency. This Court finds that Plaintiffs' have presented sufficient evidence as discussed above to create a material issue of fact on this claim. Accordingly, Movants' request for summary judgment is denied.

## **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment is GRANTED IN PART. Plaintiffs' claims against Walker, Oates, Thompson, and Pittman are dismissed.

New Orleans, Louisiana this 16th day of April, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[43] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

14