## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NATASHA TOLBERT ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-8359 C/W 18-10053** |
| **MARLIN GUSMAN ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court are Defendants' Motions in Limine (Docs. 74, 98). For the following reasons, Defendants' Motion to Exclude the Expert Testimony of Celia Noehren is DENIED, and Defendants' Omnibus Motion in Limine is DENIED IN PART, GRANTED IN PART, and DEFERRED IN PART.

## BACKGROUND

Plaintiffs Natasha Tolbert, Bridget Armstrong, and India Butler bring this action on behalf of their minor children for the wrongful death of Narada Mealey, an inmate at the Orleans Justice Center ("OJC").[1] Plaintiffs allege that Mealey did not receive proper medical treatment while incarcerated,

---

[1] Case number 18-8359 brought by Tolbert and Armstrong was consolidated with case number 18-10053 brought by India Butler.

resulting in his death. Plaintiffs bring state law medical malpractice claims and federal law claims under 42 U.S.C. § 1983. There are two groups of remaining defendants: those in law enforcement—Orleans Parish Sheriff Marlin Gusman, Deputy Kaja Harrell, Sgt. Melvin Sparks, Kevin Lewis, and Keiara Williams in their official capacities (the "Law Enforcement Defendants")—and those involved in Mealey's medical treatment—Correct Care Solutions, LLC ("CCS"), Rogelio Perez, and Monique Lawson (the "Medical Defendants").[2] Before the Court are two motions in limine. In the first—filed by the Law Enforcement Defendants and adopted by the Medical Defendants—Defendants move to exclude the expert testimony of Celia Noehren, R.N., arguing that her opinion is improperly based on inadmissible evidence. In the second, the Medical Defendants move for the exclusion of certain evidence on various grounds. This Court will consider each argument in turn.

## LAW AND ANALYSIS

### A. Celia Noehren

First, Defendants move to exclude the testimony and report of Plaintiffs' expert Celia Noehren. Noehren, a Certified Correctional Health Professional-Registered Nurse, was retained to opine on Mealey's medical care at the OJC. Plaintiffs intend to introduce Noehren's opinion in support of their § 1983 *Monell* claim against CCS. Specifically, they intend to introduce Noehren's

---

[2] Several defendants were previously dismissed. *See* Docs. 105, 106.

opinion to show that CCS had notice of unconstitutional conditions at the OJC prior to Mealey's death.[3]

In preparing her report, Noehren reviewed and relied on reports prepared by a monitor of the OJC ("Monitor Reports"). These reports were issued pursuant to a Consent Judgment in another matter, *Jones v. Gusman*.[4] The *Jones* Consent Judgment appointed a monitor to oversee its implementation and "file with the Court and provide the Parties with reports describing the steps taken by [the Sheriff] to implement [the Consent Judgment] and evaluate the extent to which [the Sheriff] has complied with each substantive provision of the [Consent Judgment]."[5] Defendants argue that both the Consent Judgment and the Monitor Reports are inadmissible, and therefore, Noehren's testimony and report should be excluded because she relies on inadmissible evidence.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[3] 436 U.S. 658, 691 (1978).
[4] Jones v. Gusman, No. 12-859 (E.D. La. 2012).
[5] *Id.*, Doc. 466 at 46.

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*,[6] and *Kumho Tire Co. v. Carmichael*.[7] The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter.[8]  Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant.[9]  In undertaking this tripartite analysis, courts must give proper deference to the traditional adversary system and the role of the finder of fact within that system.[10] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[11]  As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[12]

Defendants do not argue that Noehren is unqualified or that her opinions are not reliable and relevant. Rather, Defendants complain that her opinion relies on inadmissible evidence. They argue that the terms of the Consent Judgment require that the Monitor Reports and Consent Judgment be inadmissible. In fact, the Consent Judgment states that: "Reports issued by the Monitor shall not be admissible against Defendant [the Orleans Parish Sheriff's Office "OPSO"] in any proceeding other than a proceeding related to

---

[6] 509 U.S. 579 (1993).

[7] 526 U.S. 137 (1999).

[8] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").

[9] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010).

[10] *See Daubert*, 509 U.S. at 596.

[11] *Id.*

[12] Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881 (5th Cir. 2013).

4

the enforcement of [the Consent Judgment]."[13] It further states that: "Any admission made for the purpose of [the Consent Judgment] is not admissible if presented by Third Parties in another proceeding."[14]  Here, Plaintiffs do not intend to admit the Monitor Reports against the OPSO. Rather, they intend to use them only in support of their claim against CCS. CCS was not a party to the Consent Judgment.

Even so, Federal Rule of Evidence 703 provides that: "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." The Monitor Reports are the type of information on which an expert in the field of correctional healthcare would reasonably rely. The Monitor Reports contain facts regarding the staffing, protocols, training, and medical care at the OJC. Further, Noehren does not solely rely on these reports in reaching her opinion. Accordingly, even assuming the Monitor Reports were inadmissible, Noehren did not err in relying on them, and her opinion and testimony are not excluded on this ground.

### B. Consent Judgment and Monitor Reports

Similarly, in their second Motion in Limine, the Medical Defendants move for the exclusion of the Consent Judgment and Monitor Reports. Again, they argue that the terms of the Consent Judgment require that result. As discussed above, this argument fails, and this Court will not exclude these

---

[13] *Jones*, No. 12–859, Doc. 466, at 46.
[14] *Id.* at 48.

documents on this ground. The Court, however, defers a decision on the ultimate admissibility of these documents to trial.

### C. **Suggestions that CCS has Final Policymaking Authority**

Next, Defendants seek to exclude evidence and testimony suggesting that CCS has final policymaking authority over the operations at OJC. Defendants argue that under the terms of the Consent Judgment, the Compliance Director—not CCS—has final policymaking authority. Plaintiffs dispute this factual assertion, arguing that CCS was delegated authority for the provision of medical services at the OJC. Accordingly, Defendants' Motion asks this Court to make a factual determination inappropriate at the motion in limine stage.

### D. **Recorded Phone Calls**

Defendant asks this Court to prevent Plaintiffs from playing phone calls made by the decedent from the OJC to family and friends in the hours before his death because they are overly prejudicial. This Court finds that their probative value outweighs their prejudice. The tapes are direct and contemporaneous evidence of the decedent's condition and experience in the jail leading up to his death. Defendants' Motion is summarily denied.

### E. **Prior Incidents**

Defendants seek an order excluding evidence regarding the care and medical treatment of other inmates at the OJC. Plaintiffs admit that they do not intend to admit any evidence of particular events outside of the information contained in the Monitor Reports discussed above. Regardless, Defendants' request lacks sufficient specificity for this Court to issue a blanket order

6

limiting this type of evidence. Accordingly, ruling on this request is deferred to trial.

### F. OPSO Investigative Report

Defendants next argue that the OPSO Investigative Report following Mealey's death should be excluded. The Plaintiffs agree that the OPSO Investigative Report cannot be offered into evidence. Accordingly, this motion is granted.

### G. Testimony of Isrealy Mealey and Gayle Livaccari

Finally, Defendants seek to exclude the testimony of lay witnesses, Isrealy Mealey and Gayle Livaccari, arguing that they do not have personal knowledge regarding the treatment and care of the decedent while at the OJC. Without more, this Court finds no reason to exclude their testimony on this basis. Plaintiffs may admit the testimony of Mealey or Livaccari on issues for which they do have personal knowledge. Certainly, the Court will require any testimony admitted at trial to comply with the Federal Rules of Evidence. Accordingly, this request is denied.


## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Exclude the Expert Testimony of Celia Noehren is DENIED, and Defendants' Omnibus Motion in Limine is DENIED IN PART, GRANTED IN PART, and DEFERRED IN PART as outlined above.

New Orleans, Louisiana this 18th day of August, 2020.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**